# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

ON REHEARING

NO. 03-12-00057-CV

**City of Austin, Appellant**

v.

**Raymond E. Chandler, Daniel J. Amador, David Becker, John Beese,
Nathan Blane Brown, Michael Carter, Anastacio Cruz, Eddie de la Garza, Jose L. Delgado,
Leland Scott DePue, Carlos S. Dominguez, Kenneth J. Ferro, David Gannon, Abel Garza,
Vincent Giles, Jr., Gregory T. Graboskie, M. Michael Hart, Bonnie Harvey, Cecil Jones,
Anthony Kubesch, Christopher Megliorino, Randy Mulroy, Lori Peterson, Steven K. Reid,
Roberto Rodriguez, Jorge Rojas, Richard Sanders, Harry Singletary, Steven J. Slavik,
Ralynn Taylor, Lasandra B. Williams, Ricardo Zapata, and John Zavala, Appellees[1]**

**FROM THE DISTRICT COURT OF TRAVIS COUNTY, 353RD JUDICIAL DISTRICT
NO. D-1-GN-09-004161, HONORABLE STEPHEN YELENOSKY, JUDGE PRESIDING**

## O P I N I O N

To address the issues raised in appellant's motion for en banc reconsideration, we

withdraw our opinion and judgment dated February 7, 2014, and substitute the following in their place.

The Appellees—a group of public safety officers over the age of 40 who worked for

appellant the City of Austin's now defunct Public Safety Emergency Management Department

(PSEM)—sued the City for age-based employment discrimination. The Appellees asserted that the

---

[1] For convenience, we refer to the Appellees collectively.

City's method of consolidating the PSEM into the Austin Police Department (APD) disparately impacted older PSEM employees by stripping them of their years of service. The jury returned a verdict in favor of the Appellees. Damages were determined by the trial court in a separate hearing. The trial court rendered judgment consistent with the verdict. On appeal, the City challenges the trial court's judgment in five respects. We affirm the judgment of the trial court.

## BACKGROUND

APD is Austin's primary law-enforcement agency. It is a civil-service police agency, and as such, its employment practices are governed by chapter 143 of the Texas Local Government Code and the City's "meet and confer" labor agreements with the APD employees' union. *See generally* Tex. Loc. Gov't Code §§ 143.021–.047 (describing classification and compensation of civil service firefighters and police officers); *see also id.* § 143.303 (allowing municipalities to alter certain civil-service employment terms by agreement with employees' union). APD has strict objective standards for determining an officer's pay and rank, including "exam score, seniority points, education points and other requirements."

Prior to 2009, the PSEM was a separate non-civil-service agency encompassing the City's airport, park, and municipal-court law-enforcement operations. According to the City, the minimum base salary for PSEM employees was significantly lower than that of APD. Furthermore, there was a wider range of compensation packages for PSEM officers with the same rank and seniority, owing in part to the fact that PSEM officers were eligible for a wider range of pay stipends for various certifications, education levels, and types of assignments.

2

In 2006, the City began preparing for PSEM's consolidation into APD, which, according to the Chief of Police, would create a uniform chain of command and improve the City's ability to meet its law enforcement needs. As a result of its negotiations with the APD employees' union, the City approved the consolidation in September of 2008 (the Consolidation Agreement), with the consolidation to become effective January 4, 2009. According to the City, PSEM officers did not participate in these negotiations because they were not part of the APD employees' union.

Under the terms of the Consolidation Agreement, no PSEM employee could transfer to APD at a rank higher than "officer" and no PSEM employee could start with a base salary higher than that of an APD officer with sixteen years' experience. Furthermore, PSEM employees could include only up to three years of PSEM service as years of APD service. Given that APD officers need five years of APD service before they are eligible to sit for a promotion exam, this meant that no PSEM employee—regardless of previous rank or years of service—could be promoted to a higher rank for at least two years after the consolidation. However, to compensate for the loss of most of their pay stipends, the City gave all transferring PSEM employees a lump sum payment to ensure that they at least maintained their final PSEM salary for their first two years at APD.

Following the consolidation of PSEM into APD, each of the Appellees timely filed their individual "letter complaints" with the City of Austin Equal Employment and Fair Housing Office and the Federal Equal Employment Opportunity Commission (EEOC). *See* Tex. Lab. Code § 21.01 (specifying procedural and substantive requirements for making employment-discrimination complaints). The EEOC issued "right to sue notices" to the Appellees. Appellees subsequently filed this underlying lawsuit, alleging that the Consolidation Agreement disparately impacted PSEM employees over 40 years of age by stripping them of their years of service.

3

The City filed a plea to the jurisdiction, asserting that the Appellees' disparate-impact discrimination claim—which is the sole discrimination claim in their live petition—was not included in the Appellees' letter complaints to the EEOC. *See Pacheco v. Mineta*, 448 F.3d 783, 788 (5th Cir. 2006) (discussing distinction between disparate-impact and disparate-treatment employment discrimination claims). Therefore, according to the City, the Appellees failed to exhaust their administrative remedies with respect to their disparate-impact claim, and the trial court lacked jurisdiction to hear this case. After a pretrial hearing, the trial court denied the City's plea to the jurisdiction and the case proceeded to a jury trial.

At trial, Harvey Corn, the Appellees' expert statistician, testified that as a result of the consolidation, the average PSEM employee under 40 years of age lost 3.7 years of service when placed on APD's pay scale, but the average PSEM employee over 40 lost 6.5 years. Because seniority factored heavily into an APD officer's base pay, this disparity, according to Corn, resulted in the average PSEM employee under 40 receiving a 15.61% pay increase after consolidation, but the average employee over 40 receiving only a 5.68% increase. During cross-examination, the City questioned Corn about the validity of his analysis, and Corn admitted that he did not attempt to valuate the differences in retirement benefits, sick-leave pay, and other factors.[2]

The City called James Pearce, an economic and statistical analyst, who testified about his analysis of the pay disparities after PSEM was consolidated into APD. Pearce testified that one

---

[2] Several of the Appellees also testified about the effects of the consolidation, with one stating that unlike younger PSEM officers, older officers' income did not increase at APD because any potential increase in seniority pay would be offset by reducing the lump-sum payment they received to compensate for their loss of pay stipends. Thus, older PSEM employees were kept at the same pay level for their first two years with APD.

reason for the larger pay increases for PSEM officers under 40 years of age was that more than half of the younger employees made less than the APD minimum salary prior to consolidation, and thus their salaries would substantially increase when they became APD officers. Pearce asserted that these "outliers" skewed Corn's analysis. However, Pearce never argued that the consolidation did not result in disparate pay raises between younger and older officers or that this disparity was insignificant. Furthermore, during his damage analysis, Pearce appeared to concede that the consolidation did result in a "disparate impact" and "loss" for older PSEM officers.[3]

Following deliberations, the jury returned its verdict in favor of the Appellees. Specifically, the jury found that (1) the City's decision not to include years of service in setting the pay for PSEM employees transferring to APD had a significantly adverse effect on employees over 40 and (2) the City's decision not to include years of service was not based on a reasonable factor other than age. The trial court conducted a hearing on damages and entered a final judgment consistent with the verdict, awarding the Appellees damages equal to back pay for the salary they would have received—including overtime—had their years of service been transferred to the APD pay scale. The trial court also ordered the City to place the Appellees on the APD pay scale in a manner consistent with their years of service at PSEM. This appeal followed.

**DISCUSSION**

On appeal, the City challenges the trial court's judgment in five respects. First, the City asserts that the court erred in denying the City's plea to the jurisdiction. In its second, third, and fifth

---

[3] The Appellees contend that they did not cross-examine Pearce because his testimony was favorable to their case.

5

appellate issues, the City argues that the evidence is legally and factually insufficient to support the trial court's judgment. Finally, in its fourth appellate issue, the City contends that the trial court failed to accurately instruct the jury on causation. We will begin our analysis with the City's first appellate issue because it concerns the trial court's jurisdiction to hear this case.

**Exhaustion of administrative remedies**

In its first issue, the City asserts that the trial court erred in denying its plea to the jurisdiction. Specifically, the City argues that the Appellees' disparate-impact claim—which was the theory they relied on at trial—was not included in the Appellees' letter complaints to the EEOC. Therefore, according to the City, the Appellees failed to exhaust their administrative remedies with respect to their disparate-impact claim, and the trial court lacked jurisdiction to hear this case.

"To bring a suit for unlawful employment practices, a plaintiff must first have filed an administrative complaint with the EEOC or the [Texas Commission on Human Rights]." *University of Tex. v. Poindexter*, 306 S.W.3d 798, 807 (Tex. App.—Austin 2009, no pet.). The plaintiff's subsequent lawsuit "may raise only the specific issue[s] made in the employee's administrative complaint and 'any kind of discrimination like or related to the charge's allegations.'" *Elgaghil v. Tarrant Cnty. Junior Coll.*, 45 S.W.3d 133, 141 (Tex. App.—Fort Worth 2000, pet. denied) (quoting *Fine v. CAF Chem. Corp.*, 995 F.2d 576, 578 (5th Cir. 1993)). Courts view administrative complaints—which are often filed by laymen acting pro se—"somewhat broadly, not solely by the scope of the administrative charge itself, but by the scope of the EEOC investigation which can reasonably be expected to grow out of the charge of discrimination." *Pacheco*, 448 F.3d at 788–89 (internal quotations omitted).

6

Whether the allegations in a plaintiff's lawsuit sufficiently relate to the allegations in the plaintiff's administrative complaint is a jurisdictional fact that does not implicate the underlying merits of the plaintiff's lawsuit. *See Poindexter*, 306 S.W.3d at 807–08, 811–12. Therefore, the trial court, not the jury, makes this factual determination. *Id.* However, because the underlying jurisdictional facts in this case are not in dispute, the trial court should make the jurisdictional determination as a matter of law based solely on the undisputed facts. *Id.* at 806. We review that legal determination de novo. *See id.*

Federal and Texas law both recognize "two largely separate theories of discrimination, disparate treatment and disparate impact." *Pacheco*, 448 F.3d at 787; *Poindexter*, 306 S.W.3d at 811–12. Disparate-treatment claims involve employment actions that treat employees differently based on the employee's race, gender, or other protected status. *See Pacheco*, 448 F.3d at 787. Thus, disparate-treatment claims require proof of a discriminatory motive. *Id.* "Disparate-impact discrimination, on the other hand, addresses employment practices or policies that are facially neutral in their treatment of these protected groups, but, in fact, have a disproportionately adverse effect on such a protected group." *Id.* Therefore, a plaintiff bringing a disparate-impact claim must prove only that her employer (1) used a facially neutral policy that (2) in fact had a disproportionately adverse effect on the protected class. *See id.* at 791; *Poindexter*, 306 S.W.3d at 811.

In this case, the Appellees' live pleadings allege only a disparate-impact claim, asserting that the City's Consolidation Agreement, which stripped PSEM employees of their years of service, had a disproportionately adverse effect on PSEM employees over 40. *See Mission Consol. Indep. Sch. Dist. v. Garcia*, 372 S.W.3d at 629, 641 (Tex. 2012) (noting that persons 40 years of age and older are

protected class for purposes of Texas and federal age-based discrimination claims). By comparison, the Appellees' letter complaints allege the following:

> On or about January 4, 2009, the Airport and Park[] Police and the Marshall's service were consolidated into the Austin Police Department. When this occurred, I lost my seniority, years of service, rank, stipend pay and overtime.
>
> Younger officers with very few years of service received pay increases.
>
> The only reason ever given was the financial impact on the City.
>
> I believe that I was discriminated based on my age . . . in violation of the Age Discrimination in Employment Act of 1967 [ADEA] and the Texas Commission on Human Rights act, as amended.

As the City correctly notes, the letter complaints do not use the phrases "disparate impact" or "facially neutral policy," nor any variant thereof. However, the complaints do identify a facially neutral policy—the consolidation of the Airport and Park Police and the Marshall's service into APD. *See Gomes v. Avco Corp.*, 964 F.2d 1330, 1334–35 (2d Cir. 1992) (concluding that reference to "eight year rule" for employment promotion sufficient to alert EEOC to potential disparate-impact claim). The complaints also identify adverse effects—the Appellees' loss of seniority, years of service, rank, stipend pay, and overtime. Finally, the complaints at least allude to a resulting age-based disparity—asserting that younger officers with fewer years of service received pay increases, with the implication that older officers with more years of service did not.

Given that all thirty-three of the Appellees' letter complaints identify the same facially-neutral employment policy that allegedly disproportionally injured older employees, the EEOC would reasonably be expected to investigate this case as both a disparate-treatment and disparate-impact

claim. *See Gomes*, 964 F.2d at 1335 (noting that although EEOC complaints "most naturally support a claim of intentional discrimination," facts alleged also support disparate-impact claim). We conclude that the Appellees' letter complaints sufficiently allege a disparate-impact claim such that they have exhausted their administrative remedies for those claims. *See Pacheco*, 448 F.3d at 788–89. Thus, the trial court had jurisdiction to hear this case and did not err in denying the City's plea to the jurisdiction on that basis. We overrule the City's first appellate issue.

**Sufficiency of the evidence**

In its second, third, and fifth issues on appeal, the City challenges the legal and factual sufficiency of the evidence to support the trial court's judgment. Specifically, the City's second appellate issue asserts that the Appellees failed to make a prima facie case of age-based disparate-impact discrimination. In its third appellate issue, the City argues that it established as a matter of law that its employment decisions were based on reasonable factors other than age. Finally, in its fifth appellate issue, the City claims that there is no evidence to support the trial court's award of additional overtime pay to Appellees. We address each of these issues in turn.

*Standard of review*

It is well established that jurors are the sole judge of the credibility of the witnesses and the weight to be given to their testimony. *See City of Keller v. Wilson*, 168 S.W.3d 802, 819 (Tex. 2005). Jurors are free to credit one witness's testimony and disbelieve another's, and appellate courts cannot overturn a jury's verdict merely because we might reach a different result. *Id.* Therefore, to give proper deference to the jury's role as factfinder, we assume that the jury resolved all conflicts of

credibility in favor of its verdict, crediting favorable evidence if a reasonable juror could, and disregarding contrary evidence if a reasonable juror could have disbelieved it. *Id.*

"In reviewing the legal sufficiency of the evidence, we view the evidence in the light most favorable to the judgment . . . ." *AutoZone, Inc. v. Reyes*, 272 S.W.3d 588, 592 (Tex. 2008). Evidence is legally insufficient if it would not enable a reasonable and fair-minded person to reach the verdict under review. *See City of Keller*, 168 at 827. When an appellant challenges the legal sufficiency of the evidence supporting an adverse finding of fact for which the opposing party had the burden of proof, the appellant must demonstrate that there is no evidence, or merely a scintilla of evidence, to support the adverse finding. *See id.* By contrast, when an appellant attacks the legal sufficiency of an adverse finding on an issue for which he has the burden of proof, he must demonstrate that the evidence establishes that issue as a matter of law. *Dow Chem. Co. v. Francis*, 46 S.W.3d 237, 242 (Tex. 2001) (per curiam).

In a factual-sufficiency review, appellate courts must examine the evidence that both supports and contradicts the jury's verdict in a neutral light. *See id.* We still defer to the jury's implicit determinations of credibility and weight to be given to the evidence. *See Golden Eagle Archery, Inc. v. Jackson*, 116 S.W.3d 757, 761 (Tex. 2003). Therefore, when a party brings a factual-sufficiency challenge to a jury finding for which the party did not have the burden of proof, we consider and weigh all of the evidence and set aside the verdict only if the evidence that supports the finding is so weak as to make the verdict clearly wrong and manifestly unjust. *Cain v. Bain*, 709 S.W.2d 175, 176 (Tex. 1986); *Pitts & Collard, L.L.P. v. Schechter*, 369 S.W.3d 301, 312 (Tex. App.—Houston [14th Dist.] 2011, no pet.). Similarly, when a party attacks the factual sufficiency of

an adverse finding of fact for which he has the burden of proof, he must demonstrate on appeal that the adverse finding is against the great weight and preponderance of the evidence. *Dow Chem.*, 46 S.W.3d at 242. With these standards in mind, we turn to the City's sufficiency challenges in this case.

*Prima facie case of disparate impact*

In its second issue on appeal, the City asserts that the evidence is both legally and factually insufficient to support a prima facie case of age-based disparate-impact discrimination. Specifically, the City argues that (1) the Appellees failed to identify a specific employment practice; (2) the Appellees' claims impermissibly equate years of service to age discrimination; and (3) the Appellees failed to prove causation because the evidence does not demonstrate a "significant statistical disparity" in employee pay after consolidation. Before addressing each of these claims, we will briefly discuss the elements of a disparate-impact discrimination claim.

The plaintiff has the burden of making a prima facie case of age-based disparate-impact discrimination. *See Texas Parks & Wildlife Dep't v. Dearing*, 240 S.W.3d 330, 342 (Tex. App.—Austin 2007, pet. denied). To make a prima facie case, the plaintiff must "(1) isolate and identify the specific employment practice challenged; (2) demonstrate any observed statistical disparity that the practice has on the protected class; and (3) demonstrate a causal link between the identified practice and the demonstrated disparity." *Id.* (citing *Wards Cove Packing Co. v. Antonio*, 490 U.S. 642, 655 (1989)). Plaintiffs must identify a specific employment practice rather than a generalized policy in order "to avoid the result of employers being potentially liable for the myriad of innocent causes that may lead to statistical imbalances." *Meacham v. Knolls Atomic Power Lab.*, 554 U.S. 84, 100 (2008) (internal quotations omitted).

11

Appellees identified and challenged the Consolidation Agreement's failure to transfer PSEM employees' years of service as the specific employment practice. Appellees introduced ample evidence and testimony demonstrating that under the terms of the Consolidation Agreement, PSEM employees' salaries were capped at the level of an APD officer with sixteen years of service and they could include only three years of PSEM service as years of APD service. According to Appellees, these elements of the Consolidation Agreement resulted in the disparate impact alleged. Thus, the Consolidation Agreement's stripping PSEM employees of their years of service is the specific employment practice that the Appellees allege caused the disparate impact. *See Gomes*, 964 F.2d at1334–35 (concluding that reference to "eight year rule" for employment promotion sufficient to alert EEOC to potential disparate-impact claim).

On appeal, the City asserts that stripping PSEM employees of their years of service is too generalized a policy to satisfy the specific-employment-practice requirement. In particular, the City claims that Corn's analysis of the Consolidation Agreement failed to take into account the benefits all PSEM employees received as a result of their transfer to APD. Furthermore, the City claims that the Appellees' proposed remedy of completely transferring PSEM years of service to APD would have resulted in higher pay disparities between younger and older officers. However, these issues relate to whether the Appellees have sufficiently proven that stripping them of their years of service caused a disparate impact, not whether stripping PSEM employees is a sufficiently specific employment practice. *See Meacham*, 554 U.S. at 100 (explaining that purpose of specificity requirement is to ensure employers are not liable for myriad of innocent causes that may lead to statistical disparity). Thus, the City's complaint that the Appellees failed to allege a specific employment practice is without

12

merit. *See Loffredo v. Daimler AG*, 500 Fed. App'x 491, 498 (6th Cir. 2012) (concluding that securitization of retirement benefits for active employees was specific practice that had disparate impact on older retirees).

The City also asserts that employment practices based on years of service can never form the basis of an age-based disparate-impact claim, and thus the Appellees' criticism of the Consolidation Agreement fails as a matter of law. We find this argument unpersuasive. The City relies on *Hazen Paper Co. v. Biggins*, in which the United States Supreme Court held that "there is no *disparate treatment* under the ADEA when the factor motivating the employer is some feature other than the employee's age." 507 U.S. 604, 609 (1993) (emphasis added). In *Hazen Paper*, the court held that discriminating against an employee on the basis of his years of service—although correlated to age—did not constitute age-based disparate treatment because the decision was not motivated by age. *Id.* However, as the opinion makes clear, its analysis was strictly limited to disparate-treatment claims, as the court had not yet "decided whether a disparate impact theory of liability is available under the ADEA." *Id.*

The United States Supreme Court and this Court have since recognized that a disparate-impact theory of liability is available under the ADEA and Texas law. *See Smith v. City of Jackson*, 554 U.S. 228, 232 (2005); *Dearing*, 240 S.W.3d at 351. Given that disparate-impact claims necessarily assert that a facially neutral employment practice adversely affected older employees, it would be wholly illogical to say that employees can never bring a disparate-impact claim when the facially neutral policy relies on factors—like pension status or seniority—that are "empirically correlated with age." *See Hazen Paper*, 507 U.S. at 608. An employer like the City is, of course, free

13

to assert the affirmative defense that its use of seniority was a reasonable factor other than age. *See Meacham*, 554 U.S. at 102 ("[E]mployment criteria that are routinely used may be reasonable despite their adverse impact on older workers as a group.") (internal quotations omitted). However, there is nothing in the case law to suggest that seniority is always a reasonable factor other than age for all age-based disparate-impact claims, and we decline to adopt such a per se rule.[4]

Finally, the City asserts that Corn's testimony failed to establish a "significant statistical disparity" between younger and older PSEM employees after their consolidation into APD. Again, the City claims that Corn's analysis does not take into account various benefits PSEM employees received and improperly includes certain statistical outliers. Furthermore, the City raises statistical arguments—many of which were not made in the trial court—that it claims demonstrates that the disparity in pay after consolidation was either less than Corn claimed or preferable when compared to alternative methods of consolidation.

In disparate-impact cases, after identifying a specific employment practice, "causation must be proved; that is, the plaintiff must offer statistical evidence of a kind and degree sufficient to show that the practice in question has caused the" complained of disparity. *Watson v. Fort Worth Bank & Trust*, 487 U.S. 977, 994–95 (1988). There is no rigid formula for what constitutes a sufficient

---

[4] The City also asserts that failing to transfer PSEM employees' years of service to the APD pay scale is a "non-practice," and thus cannot be a specific employment policy for purposes of a disparate-impact claim. The City's brief does not explain what a non-practice is, nor does it cite to any cases that might shed light on the distinction between a non-practice and an affirmative employment policy. However, to the extent the City argues that employment decisions that can be characterized as non-actions cannot form the basis of a disparate-impact claim, we find no support for such a rule in the case law. *See Watson v. Fort Worth Bank & Trust*, 487 U.S. 977, 990 (1988) (concluding that employer's failure to set objective criteria for promotions could support disparate-impact claim because subjective decisions of supervisors led to racial disparities in promotions).

statistical disparity, but the "statistical disparities must be sufficiently substantial that they raise such an inference of causation." *Id.* A plaintiff need not prove causation with scientific certainty; "rather, his or her burden is to prove [causation] by a preponderance of the evidence." *Bazermore v. Friday*, 478 U.S. 385, 400 (1986).

In this case, Corn testified that because the Consolidation Agreement stripped PSEM employees of their years of service, the average PSEM employee under 40 received a 15.61% pay increase after consolidation, but the average employee over 40 received only a 5.68% increase. This testimony was corroborated, at least in part, by Pearce, the City's expert. Although Pearce testified that Corn's analysis improperly included statistical outliers like PSEM officers who made less than the APD minimum, Pearce agreed with Corn that younger PSEM employees received raises that were "9.9 percentage points higher" than their older counterparts. Pearce explained that this 9.9% was the "most relevant number," and he continually referred to it as the number that most accurately exemplified the resulting pay disparity between younger and older PSEM employees. Pearce never testified that this figure was a statistically insignificant disparity or that the statistics failed to show that stripping PSEM employees of their years of service caused this disparity. In fact, his analysis appears to have assumed that the consolidation was the cause of the disparity in pay rates.

Even assuming for the sake of argument that the jury accepted Pearce's analysis over Corn's, the jury could reasonably have concluded that the 9.9 percentage-point difference in raises after the consolidation is sufficiently substantial to raise an inference of causation. *See Watson*, 487 U.S. at 994–95 (explaining that there is no rigid formula for demonstrating causation). Furthermore, given that the jury returned a verdict in favor of the Appellees, we assume that the jury credited Corn's

15

testimony over Pearce's and thus agreed with Corn that stripping PSEM employees of their years of service effectively resulted in younger PSEM employees receiving raises that were three times higher than those of older PSEM employees. Similar statistical disparities have been sufficient to demonstrate a prima facia case of causation. *See, e.g.*, *Scales v. J.C. Bradford & Co.*, 925 F.2d 908 (6th Cir. 1991) (concluding that evidence that males were promoted to broker representative in 2.38 years on average while women were not promoted for 4.75 years was sufficient evidence of causation). Although the City's complaints about the alleged shortcomings in Corn's analysis may go to the probative value of his testimony, based on the record as a whole we conclude that there is sufficient statistical evidence from which a jury could reasonably conclude that the Consolidation Agreement caused the disparate impact alleged. *See Bazermore*, 478 U.S. at 400 (noting that "omission of variables from a regression analysis" may affect opinion's probative value but not its admissibility); *see also McClain v. Lufkin Indus., Inc.*, 519 F.3d 264, 279–80 (5th Cir. 2008) (same proposition).

Reviewing the evidence in the light most favorable to the jury's verdict, we find that there is more than a scintilla of evidence from which the jury could reasonably conclude that the Appellees made a prima facie case of age-based disparate-impact discrimination. Thus, the evidence is legally sufficient to support the jury's finding in favor of the Appellees. *See City of Keller*, 168 S.W.3d at 827. Similarly, reviewing the evidence in a neutral light, we conclude that the evidence supporting the jury's finding that the Appellees made a prima facie case of discrimination is not so weak as to clearly make the verdict wrong and manifestly unjust. Therefore, the evidence is also factually sufficient to support the jury's finding. *See Cain*, 709 S.W.2d at 176. We overrule the City's second appellate issue.

*Reasonable factor other than age*

In its third issue on appeal, the City asserts that the record establishes that the manner in which it placed PSEM employees on the APD pay scale was based on a reasonable factor other than age. Specifically, the City claims that its "goal of ensuring no loss in pay for PSEM officers in transition to [APD] undoubtedly established a reasonable factor other than age . . . ." Thus, according to the City, the evidence is both legally and factually insufficient to support the jury's finding that the City failed to prove its decision was based on a reasonable factor other than age.

"[I]t is not surprising that certain employment criteria that are routinely used may be reasonable despite their adverse impact on older workers as a group." *Smith*, 554 U.S. at 241. Therefore, both federal and Texas law provide that an employment policy that disparately impacts older workers may not be actionable if the challenged policy is based on a reasonable factor other than age. *See id.* at 239–40; *Dearing*, 240 S.W.3d at 355. This Court, relying on federal cases decided before the United States Supreme Court's decision in *Meacham*, 554 U.S. at 94, held that a plaintiff has "the ultimate burden of proof to demonstrate that any proffered [reasonable factor other than age] was unreasonable." *Dearing*, 240 S.W.3d at 355–56 (citing cases from several federal circuit courts for same proposition). However, we recognize that *Meacham*, 554 U.S. at 94, expressly overruled those federal cases that formed the basis of our conclusion in *Dearing* and established that a reasonable factor other than age is an affirmative defense for which the employer has the burden of proof. *See* Tex. Lab. Code § 21.122(b) (requiring courts to apply judicial interpretation of ADEA to Texas's standard for burden of proof in age-based discrimination claims). To establish this affirmative defense, the employer has the burden to prove that (1) its decision was based on a factor other than age and (2) that factor is reasonable. *Meacham*, 554 U.S. at 94. Thus, in order to prevail on appeal, the City must demonstrate

17

that the evidence is legally or factually insufficient to support the jury's adverse finding on an issue for which the City had the burden of proof. *See Dow Chem. Co.*, 46 S.W.3d at 242 (describing applicable standard of review).

In this case, the City asserts that its policy of ensuring that no PSEM employee's base salary decreased after consolidation demonstrates that its employment decisions within the Consolidation Agreement were based on reasonable factors other than age. It is undisputed that the City provided all PSEM employees with lump-sum payments to ensure that their salaries were not reduced from their pre-consolidation levels for at least two years. Furthermore, it does not appear that any of the Appellees' salaries were reduced as a result of the consolidation.

However, the City fails to explain a logical connection between reducing the Appellees' years of service—thereby adversely affecting their opportunities for promotion and raises—and ensuring that all PSEM employees maintained their current salaries.[5] There is no evidence or testimony in the record to suggest that the reason the Consolidation Agreement stripped PSEM employees of their seniority was to ensure that all PSEM employees did not receive a reduction in pay. At most, the lump-sum payments to PSEM employees were designed to ameliorate some, but not all, of the adverse effects of consolidation. Thus, the jury could have reasonably concluded that the City failed to prove by a preponderance of the evidence that its decision to strip PSEM employees of their years of service was based on reasonable factors other than age.

---

[5] At trial, the City also argued that its employment decisions within the Consolidation Agreement were based on demands from APD's union, a concern that PSEM employees' rank and experience did not necessarily equate to APD rank and experience, and a concern that it would have been too costly to transfer PSEM employees' years of service to APD. Although these explanations might arguably be reasonable factors other than age that could justify the City's adoption the Consolidation Agreement, the City does not raise them on appeal.

18

Considering all of the evidence in the light most favorable to the jury's verdict, the City has not established as a matter of law that its employment decision was based on a reasonable factor other than age. Thus, the evidence is legally sufficient to support the jury's adverse finding on that affirmative defense. *See id.*; *see also Meacham*, 554 U.S. at 94. Similarly, considering the evidence in a neutral light, the City has failed to demonstrate that the jury's finding is against the great weight and preponderance of the evidence. Therefore, the evidence is factually sufficient to support the jury's adverse finding. *See Dow Chem. Co.*, 46 S.W.3d at 242. We overrule the City's third appellate issue.

*Overtime pay*

In its fifth issue on appeal, the City asserts that the evidence is insufficient to support the trial court's award of damages for overtime pay. Specifically, the City argues that the Appellees did not introduce any evidence relevant to the amount of overtime pay during the liability portion of trial. Thus, according to the City, the evidence is insufficient to support the trial court's award of overtime damages.

At trial, the issue of damages was submitted to the trial court. There is nothing in the record to suggest that the City objected to this procedure.[6] As the court explained, the evidence concerning how many hours the Appellees worked, how much they were paid for that work, and how much they would have been paid had they transferred their years of service to APD was not in dispute. Thus, as the trial court noted, the amount of damages would be "a matter of math." During the damages hearing, the Appellees introduced an exhibit titled "Damage Estimates," which was a

---

[6] It is not entirely clear from the record, but it appears that the decision to have the jury determine liability and the trial court determine damages was made during an off-the-record discussion between the parties and the trial court.

19

document prepared by Pearce—the City's own expert. Following the hearing, the trial court entered a final judgment in which it awarded damages for back-pay consistent with the Appellees' exhibit.

On appeal, the City does not assert that the trial court erred in admitting the Appellees' exhibit on damages. Nor does the City assert that the evidence is incompetent or unreliable—indeed, given that the damage estimate was prepared by the City's expert, the City would be hard-pressed to debate its validity. Instead, the City appears to assert that because the Appellees offered no evidence concerning overtime pay during the liability portion of trial, the trial court should not have considered the issue during the damages hearing.

The City does not cite to, and we have not found, any precedent that supports the proposition that a plaintiff must introduce evidence of damages to the jury during the liability portion of trial when, as here, damages will be decided by the trial court in a separate hearing. *See Paradigm Oil, Inc. v. Retamco Operating, Inc.*, 372 S.W.3d 177, 183–84 (Tex. 2012) (noting that in default judgment, defaulting party is deemed to admit liability and then plaintiff must introduce evidence of non-liquidated damages). Thus, the fact that the Appellees failed to introduce evidence of the amount of overtime pay during the liability portion of trial is irrelevant. At the damages hearing, the Appellees introduced competent evidence on the amount of back pay that they were owed, including overtime. This uncontested evidence is both legally and factually sufficient to support the trial court's award of damages. The City's fifth appellate issue is overruled.

**Jury instruction on causation**

In its fourth issue on appeal, the City asserts that the trial court erred in refusing to give a separate jury instruction on causation. We review a trial court's decision to submit or refuse to

submit a particular jury instruction for an abuse of discretion. *In re V.L.K.*, 24 S.W.3d 338, 341 (Tex. 2000). The trial court has broad discretion to determine necessary and proper jury instructions. *Id.* A trial court abuses its discretion by acting arbitrarily, unreasonably, or without consideration of guiding principles. *Mercedes-Benz Credit Corp. v. Rhyne*, 925 S.W.2d 664, 666 (Tex. 1996); *Ganesan v. Vallabhaneni*, 96 S.W.3d 345, 350 (Tex. App.—Austin 2002, pet. denied).

In this case, the first question submitted to the jury was "did the City's decision not to include years of service in setting the pay for PSEM officers have a significantly adverse effect on persons age forty (40) and over?" At trial, the City submitted a proposed jury instruction: "Definition: 'Significantly adverse is measured by statistical significance.'" The trial court refused to give the City's requested instruction.

The actual jury instruction given by the trial court tracks the language of the Texas Pattern Jury Charge for age-based disparate-impact discrimination.[7] *See* State Bar of Texas, Texas

---

[7] The pattern jury charge for age-based disparate-impact discrimination asks:

> Did [*employer's*] requirement that [*describe specific employment practice*] have a disparate impact on [*name of protected group, e.g., persons age forty and over*]?
>
> "Disparate impact" is established if the identified and challenged practice has a significantly adverse effect and is not based on reasonable factors other than age discrimination.
>
> Answer "Yes" or "No."

State Bar of Texas, Texas Pattern Jury Charges-Employment PJC 107.6 (2012). Although this charge correctly states the elements of disparate-impact discrimination, it has not yet been updated to reflect that it is the employer's burden to prove that its challenged practice was based on reasonable factors other than age. *See Meacham v. Knolls Atomic Power Lab.*, 554 U.S. 84, 94 (2008).

21

Pattern Jury Charges-Employment PJC 107.6 (2012). Neither the pattern jury charge nor any federal or state precedent provides a separate instruction on causation for disparate-impact claims. Therefore, whether the trial court was required to instruct the jury on causation appears to be a question of first impression.

To preserve this complaint for appeal, the City was required to (1) submit a written request for an instruction on causation to the trial court that (2) was a substantially correct statement of the law. *See* Tex. R. App. P. 278; *Texas Dep't of Human Servs. v. Hinds*, 904 S.W.2d 629, 637–38 (Tex. 1995). The City's proposed instruction relates to whether there was a statistically significant disparate impact, not whether stripping PSEM employees of their years of service *caused* the significant disparate impact. *See Dearing*, 240 S.W.3d at 342 (listing specific employment practice, significant disparate impact, and causation as separate elements of disparate-impact claim). Because the City's proffered instruction relates to a different element of a disparate-impact claim, it did not inform the trial court that the City was requesting an additional instruction on causation. *Cf. Hinds*, 904 S.W.2d at 638 (noting that although proffered instruction misstated law, it directed trial court's attention to need for proper instruction).

Furthermore, the City's proffered instruction does not provide a substantially correct statement of the law of causation. As previously noted, there is no rigid formula for what constitutes a sufficient statistical disparity, but the "statistical disparities must be sufficiently substantial that they raise such an inference of causation." *Watson*, 487 U.S. at 994–95. The City's proffered definition eliminates the majority of this language, and merely asks the jury whether the evidence of a significant disparate impact is "statistically significant." The City does not cite to, and we have not found, any

case that uses the phrase "statistical significance" as a shorthand for the proper test of causation. Thus, the City's proposed instruction so substantially misstates the law that it has failed to adequately preserve this complaint for appeal. *See* Tex. R. Civ. P. 278 *Transcontinental Ins. Co. v. Crump*, 330 S.W.3d 211, 226 (Tex. 2010) (noting that party must bring alleged error in jury charge to trial court's attention to preserve complaint for appeal); *City of Brenham v. Honerkamp*, 950 S.W.2d 760, 768 (Tex. App.—Austin 1997, pet. denied) (concluding that proffered instruction was so illogically worded that it failed to preserve complaint for appeal).

Having concluded that the City's proffered instruction failed to bring the issue of causation to the trial court's attention and was not a substantially correct statement of the law, we conclude that the City has not preserved this issue for appeal. We overrule the city's fourth appellate issue.

## CONCLUSION

Having overruled the City's five issues on appeal, we affirm the judgment of the trial court.

_____

Scott K. Field, Justice

Before Chief Justice Jones, Justices Goodwin and Field

Affirmed on Rehearing

Filed: April 18, 2014

23