# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

---

## NO. 03-19-00393-CV

---

### Khiem H. Trinh, Appellant

### v.

### Central River Healthcare Group, P.L.L.C. and Loann T. Trinh, Appellees

---

### FROM THE 353RD DISTRICT COURT OF TRAVIS COUNTY
### NO. D-1-GN-15-004016, THE HONORABLE CATHERINE MAUZY, JUDGE PRESIDING

---

## M E M O R A N D U M   O P I N I O N

Khiem Trinh and his sister Loann Trinh were managers of Central River Healthcare Group, P.L.L.C. (CRHG) when it was founded in 2003, but the business relationship began to deteriorate in 2010. In 2015, Khiem sued Loann and CRHG, alleging claims of breach of contract and breach of fiduciary duty, among other claims not relevant to this appeal. Following a jury verdict in favor of Loann and CRHG, the district court rendered a take nothing judgment. Khiem appeals from this judgment, raising factual sufficiency challenges to the jury findings on Questions 1 and 4 of the charge. For the following reasons, we affirm.

At trial, Khiem and Loann testified in person and Khiem's father Binh Trinh testified by deposition.[1] Trial exhibits included text messages, emails, and CRHG business and tax documents. In reviewing this evidence for factual sufficiency, we "must weigh *all* of the

---

[1] Hau Gray also testified by deposition, but the parties do not cite to or rely on Gray's testimony on appeal.

evidence in the record." *Ortiz v. Jones*, 917 S.W.2d 770, 772 (Tex. 1996) (per curiam). In weighing the evidence for factual sufficiency, we must not merely substitute our judgment for that of the jury because the jury is the sole judge of the credibility of witnesses and the weight to be given their testimony. *Golden Eagle Archery, Inc. v. Jackson*, 116 S.W.3d 757, 761 (Tex. 2003). When reversing a jury verdict, we must detail the evidence and clearly state why the finding is factually insufficient, but we need not do so when affirming a jury verdict. *See Ellis Cnty. State Bank v. Keever*, 888 S.W.2d 790, 794 (Tex. 1994).

The "starting point" for a factual sufficiency review "is the charge and instructions to the jury." *Jackson*, 116 S.W.3d at 762. As relevant here, the jury answered "No" to Question 1 ("Did Loann [] and [CRHG] agree that Khiem [] would be paid an annual salary for his work at [CRHG]?") and "Yes" to Question 4 ("Did Loann [] comply with her fiduciary duty to Khiem []?"). Question 1 instructs the jury that "[i]n deciding whether the parties reached an agreement, you may consider what they said and did in light of the surrounding circumstances, including any earlier course of dealing" but clarifies that "[y]ou may not consider the parties' unexpressed thoughts or intentions." Question 4 instructs:

> To prove she complied with her duty, Loann [] must show—1. the transactions in question were fair and equitable to Khiem []; and 2. Loann [] made reasonable use of the confidence that Khiem [] placed in her; and 3. Loann [] acted in the utmost good faith and exercised the most scrupulous honesty toward Khiem []; and 4. Loann [] placed the interests of Khiem [] before her own and did not use the advantage of her position to gain any benefit for herself at the expense of Khiem []; and 5. Loann [] fully and fairly disclosed all important information to Khiem [] concerning the transactions.

The parties agree that Khiem bore the burden of proof on Question 1; thus, to succeed on his factual sufficiency challenge, Khiem must demonstrate that "the adverse finding is against the great weight and preponderance of the evidence." *See Dow Chem. Co. v. Francis*,

2

46 S.W.3d 237, 242 (Tex. 2001) (per curiam).  On Question 4, the charge imposed the burden of proof on Loann;[2] thus, Khiem must demonstrate that "the evidence that supports the finding is so weak as to make the verdict clearly wrong and manifestly unjust."  *See City of Austin v. Chandler*, 428 S.W.3d 398, 407 (Tex. App.—Austin 2014, no pet.); *see also Cain v. Bain*, 709 S.W.2d 175, 176 (Tex. 1986) (per curiam).

Regarding Question 1, Khiem argues that (1) Loann admitted in her trial cross examination that she had testified in an earlier deposition that she thought she had made a proposal to pay Khiem for his work at CRHG of "around 110 or $[1]20,000"; (2) Binh Trinh testified that while he was at a restaurant with Loann in 2011 or 2012, Loann told him that CRHG would pay Khiem a $110,000 salary per year; and (3) Khiem testified that his father and another sister told him that Loann had told them that Khiem could "be under her and [he would] get $110,000."  Nevertheless, Loann testified at trial that she "didn't promise [Khiem] an offer of a salary that he claimed" in his trial testimony, that "[t]here was no discussion between us that I can remember" regarding a salary, and that "[t]here was no agreement made between us."  On redirect, she also explained that her original answer in her deposition as to a proposal to pay Khiem was that she had no memory of a discussion regarding a salary and that it was only after Khiem's counsel offered to refresh her memory and proffered a number of "120,000" that she testified in her deposition as to a proposal.  At trial, she answered affirmatively that "in a situation like this it's easy to follow the leader" and "to follow the answers that are suggested to

---

[2]   On appeal, Loann asserts that "[a]lthough almost certainly legally incorrect, the question [Question 4] indicates that it was [Loann]'s burden to prove that she complied with a fiduciary duty to her brother."  We agree that Question 4's instruction imposed the burden on Loann, and since neither party objected to the instruction, we review the sufficiency of the evidence in light of the burden of proof established by the jury charge.  *See Osterberg v. Peca*, 12 S.W.3d 31, 55 (Tex. 2000) ("[I]t is the court's charge, not some other unidentified law, that measures the sufficiency of the evidence when the opposing party fails to object to the charge.").

you" and reiterated that she has no memory of making such a proposal. Moreover, evidence of a proposal does not prove an agreement, *see McAllen Hosps., L.P. v. Lopez*, 576 S.W.3d 389, 392 (Tex. 2019) ("Both express and implied contracts require the element of mutual agreement[.]"), and on cross examination, Khiem admitted that "I don't know what's in [Loann's] mind" as to the proposal but that he had heard it directly from "my father and my older sister." In response to questions from Loann's counsel regarding the secondhand source of information on the proposal, Khiem said, "I don't know [if] your family is raised by cheating lying to each other, but my family does not do that kind of stuff." But Loann testified that she did not remember a conversation with her father on Khiem's salary and testified as to bias that her father is "partial to my brother" and that "[i]n our [Vietnamese] culture boy[s] gets the precedence of girls." Loann also testified that as a result of an extramarital relationship—which occurred with her current husband while she was separated from her previous husband—there is disapproval and judgment from her brother and father. And Binh, in his testimony, expressly stated that "Loann is to blame for ruining the family" because of her extramarital relationship. Given the conflicting evidence in the record and that the jury is the sole judge of the witnesses' credibility and the weight to be given their testimony, *see Jackson*, 116 S.W.3d at 761, we cannot conclude that the jury's adverse finding in Question 1 "is against the great weight and preponderance of the evidence," *see Francis*, 46 S.W.3d at 242. We overrule Khiem's first issue.

Regarding Question 4, Khiem challenges the jury's finding that Loann complied with her duty by disputing that Loann established the first and fourth elements listed in the instruction: "1. the transactions in question were fair and equitable to Khiem . . . and 4. Loann [] placed the interests of Khiem [] before her own and did not use the advantage of her position to gain any benefit for herself at the expense of Khiem." Khiem argues, "Loann [] gave her

4

brother, Khiem [], the pleasure of contributing more than a half million[] dollars to a business Lo[a]nn [] claimed to own 100% herself, but she required Khiem [] to pay federal income tax on 5% of the company's profits most years, and on 50% of the profits one year, while Khiem [] received nothing in return." Regarding the taxes, the evidence does not support Khiem's assertion that Loann "required" Khiem to pay those amounts of federal income tax. Khiem testified that he and Loann were equally responsible for the preparation of the tax return, that he sent the tax documents to the tax advisor and relied on him to prepare the filings, that he signed the tax filings that indicated the profit attribution of 95% for Loann and 5% for Khiem for the relevant tax years (2005-2012) except the 2007 tax filing indicated a 50% split, and that he "wasn't interest[ed] in the profit [during] that period of time because there's no profit." As to the contributions, Khiem cites to Binh's testimony that Binh "gave Khiem at least $510,000 which [he] underst[ood] Khiem used to build" three clinics with CRHG.[3] But some evidence at trial showed that Khiem may have forfeited whatever interest he had in CRHG. In October 2011, he emailed Loann: "I don't want to run the clinics. I am saving it before they collapse. Those are your clinics. I built them in the beginning for you. . . . I want you to take over without any headache. . . . Every investment in there is yours." Loann testified to the point of Khiem's email: "So basically he's willing to forfeit everything so that way I can come back and run and resuscitate the clinic. That to me means that everything is under my management, my care[]. The whole business is legally under my direction[]." She also testified that she understood this email to mean "that he's relinquished all his positions whether management, ownership, all investment. So it says every investment is yours." Loann then explained that there was an

---

[3] There was also evidence that from 2008 through 2011, Loann contributed "above $700,000" to CRHG.

effective "changing of the guard" and that she took over the business in November.[4] Reviewing all the evidence in the record, we cannot conclude that the evidence that supports the findings that the transactions in question were fair and equitable and that Loann did not use her position to gain an advantage at the expense of Khiem "is so weak as to make the verdict clearly wrong and manifestly unjust." *See Chandler*, 428 S.W.3d at 407. We overrule Khiem's second issue.

As required, we have carefully weighed all the evidence in the record. *See Ortiz*, 917 S.W.2d at 772. We conclude that the evidence is factually sufficient to support the jury's findings and that the verdict is not "so contrary to the overwhelming evidence as to be clearly wrong and unjust." *See Cain*, 709 S.W.2d at 176. We affirm the district court's final judgment.

_____

Melissa Goodwin, Justice

Before Justices Goodwin, Baker, and Kelly

Affirmed

Filed:   June 9, 2021

---

[4] In his opening brief, Khiem did not address the possibility that he may have forfeited his interests, although there was testimony at trial on this issue. Additionally, Loann expressly raised this issue with supporting record cites in her response brief: "But more importantly, the evidence at trial was that [Khiem] forfeited any interest he held in the struggling business." In his reply brief, Khiem did not respond to this point.