Opinion issued January 23, 2020



In The

# Court of Appeals

For The

# First District of Texas

————————————

## NO. 01-19-00197-CV

———————————

## CITY OF HOUSTON, Appellant

## V.

## BOBBY TERRY, Appellee

On Appeal from the 80th Judicial District
Harris County, Texas
Trial Court Case No. 2018-06593

## MEMORANDUM OPINION

The City of Houston appeals from the trial court's denial of its plea to the jurisdiction. We reverse and render a judgment dismissing for lack of jurisdiction.

## BACKGROUND

Bobby Terry was electrocuted while performing maintenance work on a communication tower leased by the City. He sued the City under two theories of liability. He asserted a negligence claim contending that the City had waived its governmental immunity under the Tort Claims Act's provision covering personal injuries caused by the use of tangible personal property. *See* TEX. CIV. PRAC. & REM. CODE § 101.021(2). He also asserted a premises defect claim contending that the City had waived its governmental immunity under the Tort Claims Act's premises liability provision. *See id.* §§ 101.021(2), 101.022(a).

The City filed a plea to the jurisdiction contending that it had not waived its governmental immunity. With respect to Terry's negligence claim, the City asserted that its lone employee at the accident site had not caused any injury through the use of tangible personal property. As to Terry's premises defect claim, the City asserted that it had not waived its immunity because it did not have actual knowledge of the dangerous condition before Terry was injured.

Both parties submitted evidence in support of their respective positions. In the summary that follows, we view the evidence in the light most favorable to Terry, indulging every reasonable inference raised and resolving any doubts in his favor.

Terry was an employee of an independent contractor hired by the City to maintain communications towers. On the day of the accident, Terry was assigned to

climb a tower that was about 300 feet tall to replace a lightbulb at the top. He was accompanied to the site by an employee of the City, Onterrion Hunter, who was there to unlock the gate to the premises, unlock the box housing the tower's control panel, and turn off the electricity that powered the tower. For Terry's safety, the power needed to be shut off before he could climb the tower and replace the lightbulb.

The control box is at the tower's base. Removing the control box's faceplate turns off the power to the tower—or at least that is how the control box is designed to work. There is a factual dispute as to who removed the faceplate that day—Terry says it was Hunter and Hunter says it was one of Terry's coworkers who was also at the site—but it is undisputed that the faceplate was removed before Terry began his ascent. Terry testified that he asked Hunter if the power had been turned off before he began climbing and that Hunter told him it had.

It took Terry a half hour to an hour to climb up to the lightbulb. Once Terry reached the top of the tower, he secured himself in place with a safety lanyard and removed the housing encasing the lightbulb. When he grabbed the lightbulb itself, he was electrocuted and passed out. After Terry regained consciousness, he climbed back down the tower and subsequently was taken to the hospital in an ambulance.

After the accident, Hunter put the faceplate back on the control box. Once the faceplate was in place, Hunter saw the other lights on the tower turn back on and heard the humming of electricity as power returned to the tower.

In his deposition, Terry testified that he was electrocuted because "the power wasn't turned off or it wasn't turned off correctly." Hunter testified that he did not know the source of the electricity that shocked Terry. Hunter maintained, however, that the power was off because (1) power immediately stops running to the tower when the control box's faceplate is removed and (2) Terry's injuries would have been far more severe had the power been on.

Hunter noted that there are capacitors in or near the control box and on the tower, both of which may retain some residual voltage after the power is turned off. He knew that the capacitors associated with the control box retained voltage only for a short while. A manual concerning the control box indicates that this residual voltage should dissipate after about one minute. Hunter stated that the power stored in these capacitors would last from "seconds to maybe a couple of minutes." He did not know if the tower's capacitors were like the ones in or near the box. He agreed that it was possible that the tower's capacitors might retain residual voltage for a longer period of time, but he had no training as to them and did not know how long they retained voltage.

The trial court granted the City's jurisdictional plea as to Terry's negligence claim but denied the plea as to his premises defect claim. The City appeals from the denial of its jurisdictional plea contending that it is immune from suit on the premises

defect claim. Terry has not appealed from the trial court's ruling that his negligence claim is barred by governmental immunity.

## DISCUSSION

### *Standard of Review*

We review de novo a trial court's ruling on a plea to the jurisdiction. *City of Houston v. Houston Mun. Emps. Pension Sys.*, 549 S.W.3d 566, 575 (Tex. 2018). When, as here, the plea challenges the existence of jurisdictional facts, we decide whether the record raises a fact issue that must be resolved by the trier of fact. *Klumb v. Houston Mun. Emps. Pension Sys.*, 458 S.W.3d 1, 8 (Tex. 2015). In doing so, we accept as true all evidence favorable to the nonmovant, indulging every reasonable inference and resolving any doubts in the nonmovant's favor. *Suarez v. City of Tex. City*, 465 S.W.3d 623, 633 (Tex. 2015). If the evidence raises a fact issue, then the plea must be denied; if not, then the plea must be granted. *Id.*

### *Applicable Law*

This appeal requires us to decide whether the City is immune from suit as to Terry's premises liability claim. Because Terry did not appeal from the trial court's order, his negligence claim is not before us. *See* TEX. R. APP. P. 25.1(c); *Lubbock Cty. v. Trammel's Lubbock Bail Bonds*, 80 S.W.3d 580, 584 (Tex. 2002).

A claim for premises liability is distinct from a claim for general negligence. *See Sampson v. Univ. of Tex. at Austin*, 500 S.W.3d 380, 384–91 (Tex. 2016); *Oncor*

*Elec. Delivery Co. v. Murillo*, 449 S.W.3d 583, 591–92 (Tex. App.—Houston [1st Dist] 2014, pet. denied) (en banc). The latter is not a basis for the waiver of governmental immunity under the Tort Claims Act's premises liability provision. *See* TEX. CIV. PRAC. & REM. CODE §§ 101.021(2), 101.022(a); *Sampson*, 500 S.W.3d at 385–86. The Tort Claims Act's premises liability provision imposes heightened requirements for liability, and they cannot be avoided by recasting a premises defect claim as one for general negligence. *Sampson*, 500 S.W.3d at 385–86.

A governmental unit generally is subject to suit for premises defects to the same extent that a private person would be with respect to a licensee on private property. TEX. CIV. PRAC. & REM. CODE § 101.022(a). Thus, a governmental unit owes a duty not to injure those on its property by willful, wanton, or grossly negligent conduct and must use ordinary care either to warn of, or make reasonably safe, a dangerous condition that it is aware of and persons on its property are not. *Tarrant Reg'l Water Dist. v. Johnson*, 572 S.W.3d 658, 664 (Tex. 2019).

Awareness means actual knowledge of the dangerous condition at the time of the accident. *Univ. of Tex. at Austin v. Hayes*, 327 S.W.3d 113, 117 (Tex. 2010) (per curiam). Constructive knowledge is not enough. *City of Corsicana v. Stewart*, 249 S.W.3d 412, 415–16 (Tex. 2008) (per curiam). There is no one test for deciding whether there was actual knowledge. *Univ. of Tex.-Pan Am. v. Aguilar*, 251 S.W.3d 511, 513 (Tex. 2008) (per curiam). Circumstantial evidence suffices to show actual

6

knowledge only when it does so directly or by reasonable inference. *Stewart*, 249 S.W.3d at 415.

*Analysis*

Terry does not allege that Hunter's conduct was willful or wanton or that Hunter was grossly negligent. Terry solely relies on the Tort Claims Act's premises defect provision as the basis for waiver of the City's governmental immunity. During the course of litigation, he has advanced at least two distinct positions as to how he was electrocuted. He has argued that Hunter failed to turn off the electricity altogether, and he has argued that residual electricity retained by the capacitors remained when he tried to change the tower's lightbulb. In either case, the dangerous condition of which he complains relates to the tower's electricity.

We reject Terry's implicit contention that Hunter's alleged failure to turn off the electricity, or to do so correctly, is a premises defect claim. In *Oncor*, we distinguished between claims of general negligence and premises liability in the context of a suit alleging injuries from electrocution. 449 S.W.3d at 591–92. We explained that malfeasance theories of liability alleging injury resulting from affirmative, contemporaneous conduct of another, rather than by a condition created by the other's act, state a claim for general negligence, not premises liability. *Id.* Premises liability instead concerns nonfeasance theories of liability based on the failure to take measures to make the property safe. *Id.* Discussing the facts of that

7

case, we noted that telling a contractor that the electricity to a transformer had been turned off when in fact it had not would be an allegation of general negligence. *See id.* at 593. Terry's allegation that Hunter did not turn off the power but nevertheless assured Terry that he had done so likewise is a complaint about affirmative, contemporaneous conduct that allegedly caused the injury and therefore constitutes a general negligence claim. *See Sampson*, 500 S.W.3d at 388–91; *Oncor*, 449 S.W.3d at 591–93.

A general negligence claim cannot serve as the basis for the waiver of governmental immunity under the premises defect provision of the Tort Claims Act. *See* TEX. CIV. PRAC. & REM. CODE § 101.022(a); *Sampson*, 500 S.W.3d at 385–86. Any fact issue relating to Hunter's alleged failure to turn off the electricity to the tower therefore is immaterial to the merits of the lone issue before us on appeal.

As to Terry's alternate theory about the residual electricity stored in the capacitors, the record does not raise a fact issue as to whether Hunter knew that this residual electricity posed a danger to Terry. Hunter was familiar with the capacitors in or near the control box, but it is undisputed that any residual electricity stored in them should have dissipated about a minute or two after the power was turned off. Given that it took Terry at least 30 minutes to climb the tower and reach the lightbulb where he was electrocuted, Hunter's awareness that these capacitors briefly held residual voltage does not support an inference that he had actual knowledge of the

8

dangerous condition that Terry encountered. Hunter testified that he would not expect there to be any power left in control box's capacitors by the time Terry reached the lightbulb at the top of the tower.

Hunter acknowledged that it is possible that the capacitors on the tower itself could retain electricity for a longer period of time, but he did not know if they did so or not. His testimony makes it clear that he did not have actual knowledge of the dangerous condition that allegedly existed at the time of the accident:

Q. And the only way that power could still go to the tower once the faceplate's removed is through the capacitors?

A. Yes. For a short amount of time, yes.

Q. A short amount of time based on the capacitors that are on the ground near the box, correct?

A. Yes.

Q. But you did—

A. That's what I'm basing it off of, yes.

Q. Yes, sir. But you did testify that there's additional capacitors on the tower, right?

A. Yes.

Q. And you were never trained on those capacitors?

A. No.

Q. So, you can't sit here and—and tell our jury one way or another about the time that those additional capacitors would hold power?

A. Correct.

Q. So, it could hold power for 20 or 30 seconds? It's possible?

A. Yes.

9

Q. It could hold power for 45 minutes to an hour?

A. Yes.

Q. And, unfortunately, you don't know one way or another?

A. No.

At most, Hunter's testimony about the tower's capacitors raises an inference that he may have been aware of a hypothetical hazard. That is not enough. *See Sampson*, 500 S.W.3d at 392 ("Hypothetical knowledge will not suffice."); *see also Reyes v. City of Laredo*, 335 S.W.3d 605, 609 (Tex. 2010) (per curiam) ("Awareness of a potential problem is not actual knowledge of an existing danger."). To affirm the trial court's ruling, there must be a fact issue as to whether Hunter had actual knowledge of the existing dangerous condition that Terry encountered. There is not.

Terry relies on *Jefferson County v. Akins*, 487 S.W.3d 216 (Tex. App.—Beaumont 2016, pet. denied), in support of his contrary position. But *Akins* is not like Terry's suit. *Akins* was a slip-and-fall case, in which a jury found for the plaintiff and a divided court of appeals affirmed. *Id.* at 220, 234. The defendant contended on appeal that there was legally insufficient evidence that it knew about the dangerous condition—a wet floor—when the plaintiff fell. *Id.* at 228–29. The jury heard evidence that a mopping crew was near the spot where the plaintiff fell and that the plaintiff and the floor surrounding the spot where she fell were wet afterward. *Id.* at 222, 228. The crew's supervisor was aware that wet floors posed a safety risk and she scolded her crew immediately after the accident for having left

10

the area wet. *Id.* at 222, 228–29. The panel's majority held that a reasonable jury could infer that the defendant actually knew of the dangerous condition at the time of the accident because there was evidence that the defendant's employees created the condition. *See id.* at 228–29. One member of the panel dissented. *Id.* at 234–37.

Assuming without deciding that *Akins* was correctly decided, its reasoning is inapposite here. The majority relied on the principle that when a property owner creates the dangerous condition at issue, this circumstance is some evidence that it actually knew about the condition, which creates a fact issue for the jury to resolve. *Id.* at 228 (citing *Keetch v. Kroger Co.*, 845 S.W.2d 262, 266 (Tex. 1992)). But Terry's lone viable premises defect claim is not premised on Hunter having created the dangerous condition that Terry encountered. Assuming that the tower's capacitors were the source of the electricity that injured Terry, any power they stored was present because that is how the capacitors operate. Hunter, however, did not know they posed a danger, and Terry does not allege that Hunter did anything that affected how they operated. Hunter's act of turning off the tower's power, which did not electrocute Terry, is not analogous to mopping the floor and leaving it wet.

**CONCLUSION**

We reverse the trial court's order denying the City's plea to the jurisdiction and render a judgment of dismissal for lack of jurisdiction.

11

Gordon Goodman
Justice

Panel consists of Justices Lloyd, Goodman, and Landau.

Justice Landau, concurring without separate opinion.