# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

## NO. 03-18-00737-CV

**Fili Giovanni Chacon, Appellant**

**v.**

**Cassidy Christine Gribble, Appellee[1]**

### FROM THE 27TH DISTRICT COURT OF BELL COUNTY
### NO. 287,779-A, THE HONORABLE JOHN GAUNTT, JUDGE PRESIDING

## M E M O R A N D U M   O P I N I O N

Fili Giovanni Chacon (Father) appeals from the trial court's final order adjudicating that he is the father of J.L.C.; appointing him and Cassidy Christine Gribble (Mother) joint managing conservators; and granting Mother the exclusive right to determine the child's primary residence within Bell County, contiguous counties, and Travis County. Because we conclude that the trial court abused its discretion in designating Mother as the conservator with the exclusive right to determine J.L.C.'s primary residence, we will reverse those portions of the trial court's order relating to conservatorship, possession, and child support and remand the cause for further proceedings.

---

[1] This case was originally styled "In the Interest of J.L.C."

## BACKGROUND

J.L.C. was born on June 5, 2016, and in September 2016, the Attorney General of Texas filed a petition to establish the parent-child relationship. The petition alleged that Mother's then-husband and J.L.C.'s presumed father was not her biological father and that Father, with whom Mother had an extra-marital relationship, was the child's biological father. The trial court ordered parentage testing, which determined, to a high degree of certainty, that Father is J.L.C.'s biological father. Father subsequently filed a counter-petition stating that he is J.L.C.'s father and requesting that he be appointed sole managing conservator with the exclusive right to determine the child's primary residence without regard to geographic location.

A final hearing began April 11, 2018, and continued May 7, 2018. At the hearing, the trial court heard testimony from Father, Mother, Father's mother, Mother's maternal grandmother, and several of Mother's friends. At the conclusion of the hearing, the trial court informed the parties that it would take the matter under advisement. On June 2, 2018, the trial court signed an order that, among other things, appointed Father and Mother joint managing conservators and granted Mother the exclusive right to determine J.L.C.'s primary residence. In two issues on appeal, Father challenges the trial court's final order.[2]

## DISCUSSION

*Standard of Review*

We review a trial court's decisions on conservatorship for an abuse of discretion. *In re J.A.J.*, 243 S.W.3d 611, 616 (Tex. 2007); *R.H. v. D.A.*, No. 03-16-00442-CV, 2017 WL 875317, at *3 (Tex. App.—Austin Mar. 2, 2017, pet. dism'd) (mem. op.). A trial court

---

[2] Mother was not represented by counsel in the trial court or on appeal. In addition, she has not filed a brief in this appeal.

abuses its discretion when it acts in an arbitrary or unreasonable manner, or when it acts without reference to any guiding rules or principles. *Coburn v. Moreland*, 433 S.W.3d 809, 823 (Tex. App.—Austin 2014, no pet.); *Barndt v. Barndt*, No. 03-17-00796-CV, 2019 WL 1746995, at *3 (Tex. App.—Austin Apr. 19, 2019, no pet.) (mem. op.).

In family law cases, the abuse-of-discretion standard overlaps with traditional sufficiency standards of review. *Zeifman v. Michels*, 212 S.W.3d 582, 588 (Tex. App.—Austin 2006, pet. denied). Consequently, challenges to legal and factual sufficiency do not constitute independent grounds for asserting error but are relevant factors in determining whether the trial court abused its discretion. *Coburn*, 433 S.W.3d at 823; *In re Marriage of C.A.S.*, 405 S.W.3d 373, 382 (Tex. App.—Dallas 2013, no pet.). In applying the standard, we engage in a two-pronged inquiry: (1) whether the trial court had sufficient information upon which to exercise its discretion; and (2) if so, whether the trial court erred in that application. *Zeifman*, 212 S.W.3d at 588. Under the first inquiry, we apply traditional sufficiency standards of review. *Id.* Under the second inquiry, we must decide whether, based on the evidence before it, the trial court made a reasonable decision. *Id.*

When, as here, the trial court does not issue findings of fact and conclusions of law, "all facts necessary to support the trial court's ruling and supported by the evidence are implied in favor of the trial court's decision." *Id.* "But when the appellate record includes both the reporter's record and the clerk's record, as it does here, the implied findings are not conclusive and may be challenged for legal and factual sufficiency." *Id.* In reviewing a trial court's finding for legal sufficiency, we consider the evidence in the light most favorable to the verdict crediting favorable evidence if a reasonable fact-finder could have done so and disregarding contrary evidence unless a reasonable fact-finder could not. *City of Keller v. Wilson*,

3

168 S.W.3d 802, 827 (Tex. 2005).  When reviewing for factual sufficiency, we consider all the evidence in the record and will set aside a finding only if the supporting evidence is so weak, or so contrary to the overwhelming weight of all the evidence, as to make the finding clearly wrong and manifestly unjust.  *Cain v. Bain*, 709 S.W.2d 175, 176 (Tex. 1986); *City of Austin v. Chandler*, 428 S.W.3d 398, 407 (Tex. App.—Austin 2014, no pet.).

When reviewing a trial court's conservatorship decision, we are mindful that conservatorship determinations are "intensely fact driven," *Lenz v. Lenz*, 79 S.W.3d 10, 19 (Tex. 2002), and that the trial court is in the best position "to observe the demeanor and personalities of the witnesses and [to] 'feel' the forces, powers, and influences that cannot be discerned merely from reading the record," *Echols v. Olivarez*, 85 S.W.3d 475, 477 (Tex. App.—Austin 2002, no pet.).  The fact that we might decide the issue differently than the trial court does not establish an abuse of discretion.  *Zeifman*, 212 S.W.3d at 587.  "An abuse of discretion does not occur as long as some evidence of a substantive and probative character exists to support the trial court's decision."  *Id.*

*Joint Managing Conservatorship*

In his first appellate issue, Father contends that the trial court's decision to appoint Mother as a joint managing conservator violates Section 153.004 of the Texas Family Code and, consequently, constitutes an abuse of discretion.

"The best interest of the child shall always be the primary consideration of the court in determining the issues of conservatorship and possession of and access to the child." Tex. Fam. Code § 153.002.  Ordinarily, there is a presumption that it is in the child's best interest for the court to appoint both parents as joint managing conservators.  *See id.* § 153.131(b).  A

4

finding of a history or pattern of family violence involving the parents of a child removes the presumption. *Id.* "Family violence" is an act that is intended to result in physical harm, bodily injury, assault, or sexual assault, or that is a threat that reasonably placed the family member in fear of imminent physical harm, bodily injury assault, or sexual assault, but does not include defensive measures to protect oneself. *Id.* § 71.004; *see also id.* § 71.003 (defining "family" to include "individuals who are the parents of the same child").

In addition, Section 153.004 of the Family Code sets out specific requirements for determining conservatorship in cases where there is evidence of domestic violence or sexual abuse. *See id.* § 153.004 (entitled "History of Domestic Violence or Sexual Abuse"). First, subsection (a) provides that when determining conservatorship, the trial court must consider any evidence of physical or sexual abuse "by a party directed against the party's spouse, a parent of the child, or any person younger than 18 years of age committed within a two-year period preceding the filing of the suit or during the pendency of the suit." *Id.* § 153.004(a). As applicable to Father's arguments, subsection (b) states:

> The court may not appoint joint managing conservators if credible evidence is presented of a *history or pattern* of past or present child neglect, or physical or sexual abuse by one parent directed against the other parent, a spouse, or a child, including a sexual assault in violation of Section 22.11 or 22.021, Penal Code, that results in the other parent becoming pregnant with the child.

*Id.* § 153.004(b) (emphasis added). In addition,

> It is a rebuttable presumption that the appointment of a parent as the sole managing conservator of a child or as the conservator who has the exclusive right to determine the primary residence of a child is not in the best interest of the child if credible evidence is presented of a *history or pattern* of past or present child neglect, or physical or sexual abuse by that parent directed against the other parent, a spouse, or a child.

5

*Id.* (emphasis added).

On appeal Father contends that based on the evidence presented at the final hearing, the trial court was prohibited by Section 153.004 from appointing Mother a joint managing conservator and that the court instead was required to appoint him sole managing conservator of J.L.C. At the final hearing, Mother was questioned about her recent arrests for assault. In response to questions by Father's counsel, Mother acknowledged that she had been arrested in December 2017 for assaulting Father and that she had spent six weeks in jail because she "had no bond." Mother explained that she pleaded guilty to the assault charge against Father and that she received a conviction with an affirmative finding of family violence. Father contends that this record establishes as a matter of law that credible evidence was presented of a "history" of physical abuse by Mother against Father. *See id.*

It cannot be disputed that the commission of assault family violence under the Texas Penal Code constitutes "physical abuse" under Section 153.004. *See* Tex. Penal Code § 22.01(a)(1) (providing that assault is committed when person "intentionally, knowingly, or recklessly causes bodily injury to another"), (b)(2) (specifying that assault under Section 22.01(a)(1) is third-degree felony when committed against person with relationship to defendant under certain provisions of Family Code, including Section 71.003); *see also* Tex. Fam. Code § 71.004(1) (definition of "family violence"). Therefore, whether Mother's assault conviction constitutes a "history or pattern" of physical abuse under Section 153.004 turns on the meaning of the term "history" and, more specifically, on whether a single incident of physical abuse constitutes a "history."

Because the term "history" is not defined in the Family Code, we give the term its ordinary meaning. *See* Tex. Gov't Code § 311.011; *Greater Hous. P'ship v. Paxton*,

6

468 S.W.3d 51, 58 (Tex. 2015) (explaining that "[u]ndefined terms in a statute are typically given their ordinary meaning"). The term "history" is often defined as "events that form the subject matter of a history" or "events of the past." *In re Marriage of Stein*, 153 S.W.3d 485, 489 (Tex. App.—Amarillo 2004, no pet.) (citing Merriam-Webster's Collegiate Dictionary 549 (10th ed. 2000)). Similarly, "history" can be "an eventful past" or "a whole series of past events connected with a particular person or thing." *See C.C. v. L.C.*, No. 02-18-00425-CV, 2019 WL 2865294, at *14 (Tex. App.—Fort Worth July 3, 2019, no pet.) (mem. op.) (citing lexico.com/en/definition/history). Based on these definitions, the term "history," in common usage, primarily refers to a series of past events rather than an isolated incident. *Id.* at *16.

The common meaning of "history" is not limited, however, to multiple events and may, in certain contexts, refer to a singular event. "History" is also defined as "a past characterized by a particular thing," "an account of a patient's medical background," and "an established record." *See id.* at *14; Merriam-Webster's Collegiate Dictionary 549 (10th ed. 2000) (defining "history"). In this context, "history" may refer to a single thing or incident when the nature of the thing or incident is such that it characterizes a past. For example, a person may have a "criminal history" as a result of a singular crime, such as an arrest for homicide, or have a "history of mental illness" as a result of a singular diagnosis, such as schizophrenia. Applying this definition to Section 153.004, we conclude that a single act of violence or abuse may, although not always, amount to a "history" of physical abuse. *See Baker v. Baker*, 469 S.W.3d 269, 274 (Tex. App.—Houston [14th Dist.] 2015, no pet.) ("Section 153.004(b) indicates that a history can be established by just a single incident."); *Alexander v. Rogers*, 247 S.W.3d 757, 762 (Tex. App.—Dallas 2008, no pet.) (noting that "[o]ne incident of physical violence can constitute a history of physical abuse"); *In re Marriage of Stein*, 153 S.W.3d at 489 (noting that "a single act

7

of violence or abuse . . . can amount to a history of physical abuse" and stating that "because the acts of physical abuse were either conceded by the parties or revealed by other uncontradicted testimony at trial, as a matter of law credible evidence was presented of a history of physical abuse by one parent against the other parent").

In addition, construing "history" such that one or more incidents may form a "history" is consistent with and gives effect to those provisions in the statute that require consideration of a single incident. *See TGS-NOPEC Geophysical Co. v. Combs*, 340 S.W.3d 432, 439 (Tex. 2011) ("We presume that the Legislature chooses a statute's language with care, including each word chosen for a purpose, while purposefully omitting words not chosen."). In other provisions in Section 153.004, the Legislature has required the trial courts to consider whether there has been abuse without referencing a "history or pattern." For example, subsection (c) states,

> The court shall consider the commission of family violence of sexual abuse in determining whether to deny, restrict, or limit the possession of a child by a parent who is appointed as a possessory conservator.

Tex. Fam. Code § 153.004(c). Under this subsection, the Legislature has made clear that a trial court must consider even a single incident of abuse in deciding possessory rights. Had the Legislature intended to draw a similar numerical distinction in subsection (b), it could have done so by requiring credible evidence of an "act" or "incident" or, conversely, of "acts or incidents." *Cf. In re T.G.*, No. 05-12-00460-CV, 2013 Tex. App. LEXIS 7508, at *24 (Tex. App.—Dallas June 19, 2103, no pet.) (mem. op.) ("Had the Legislature [in Section 153.004(b)] intended that one act would forever bar two parents from jointly managing their child, it could have said so."). By using the more generalized "history or pattern" language in subsection (b), the Legislature

8

has signaled that the trial court should determine whether a single incident, or even multiple incidents, constitutes clear evidence of a "history or pattern" based on the particular facts presented in each case. As a result, Section 153.004(b) gives "the trial court discretion to decide whether there is such a history of abuse that the parents cannot act in a joint parenting role." *C.C.*, 2019 WL 2865294, at \*16; *see also Long v. Long*, No. 03-97-00073-CV, 1997 WL 722704, at \*2 (Tex. App.—Austin Nov. 20, 1997, no pet.) (not designated for publication) (concluding that under ordinary meaning of "history or pattern," instances of contact raised by appellant's testimony, even if accepted as true, did not "conclusively prove a history or pattern of abuse" and that "[t]he trial judge could have reasonably concluded that there was not a history or pattern of abuse").

In this case, the trial court impliedly found that there was not a "history or pattern of past or present child neglect, or physical or sexual abuse" that would prevent Mother and Father as acting as joint managing conservators. *See* Tex. Fam. Code § 153.004(b). As previously discussed, Mother testified that she had been arrested and convicted for committing assault against Father and that she received a finding of family violence. Mother did not, however, provide any additional details about the events leading to her arrest, and she was not questioned further about the incident. Similarly, Father was not asked and did not testify about the assault by Mother against him. As a result, no evidence was presented concerning the underlying facts or events leading to Mother's arrest. We cannot conclude that Mother's arrest and conviction for assault family violence, standing alone, mandates a finding that there exists "such a history of abuse that the parents cannot act in a joint parenting role." *See C.C.*, 2019 WL 2865294, at \*16; *see also Long*, 1997 WL 722704, at \*2. Consequently, based on the record before us, we cannot

9

conclude that the trial court abused its discretion in appointing Father and Mother joint managing conservators. *See* Tex. Fam. Code § 153.004(b). Father's first issue on appeal is overruled.

*Exclusive Right to Establish Primary Residence*

In his second issue on appeal, Father contends that the trial court abused its discretion in appointing Mother as the joint conservator with the right to establish J.L.C.'s primary residence. Father argues that the evidence is legally and factually insufficient to support the trial court's conclusion that the designation is in J.L.C.'s best interest and that the trial court should have instead appointed him the conservator with the right to establish the child's primary residence without geographical restriction.

When the trial court appoints joint managing conservators, it must designate the conservator who has the right to determine the primary residence of the child. *Id.* § 153.134. As with all "issues of conservatorship," the primary consideration for the trial court in deciding who should have this exclusive right is the best interest of the child. *Id.* § 153.002. Trial courts generally have wide discretion in determining what is in the child's best interest, *see Gillespie v. Gillespie*, 644 S.W.2d 449, 451 (Tex. 1982), and may use a non-exhaustive list of factors to aid in the determination, *Holley v. Adams*, 544 S.W.2d 367, 371-72 (Tex. 1976). These factors include (1) the child's desires; (2) the emotional and physical needs of the child now and in the future; (3) the emotional and physical danger to the child now and in the future; (4) the parental abilities of the individuals seeking custody of the child; (5) the programs available to assist these individuals to promote the best interest of the child; (6) plans for the child by the parties seeking custody; (7) the stability of the proposed placement; (8) the parent's acts or omissions that may indicate that the parent-child relationship is not proper; and (9) any excuse for the acts or

omissions of the parent. *Id.* Proof of best interest is not limited to these factors, and no single factor is controlling. *See Clemons v. Lynn*, No. 03-16-00360-CV, 2017 Tex. App. LEXIS 2371, at *5-6 (Tex. App.—Austin Mar. 22, 2017, no pet.) (mem. op.) (citing *M.C. v. Texas Dep't of Family & Protective Servs.*, 300 S.W.3d 305, 311 (Tex. App.—El Paso 2009, pet. denied)). In addition, not all factors apply in every case, and the presence of a single factor may, in some instances, be adequate to support a best-interest finding. *M.C.*, 300 S.W.3d at 311.

The evidence presented at the final hearing established that J.L.C. has been living with Father in California since December 28, 2017, when Mother was arrested and jailed for assault against him. Father has been an automotive technician for two-and-a-half years and has been doing the same type of work for ten years. J.L.C. has healthcare, dental, and vision insurance through Father's wife, who is on active duty in the military. J.L.C. is "enrolled fully in day-care" and has "one baby-sitter." Father testified that J.L.C. eats dinner with him and his wife every night; "has her own room, crib"; and "sleeps in the same area" and is "around the same people every day." Father testified that J.L.C. is "very happy," "plays very well now with her [step]brother and her [step]sister," and "is learning a lot more."

Father told the trial court that he did not think Mother could provide a stable home for J.L.C. because she has had five residences in the past eighteen months and because J.L.C. was staying "with different people all the time." Father also expressed concern about Mother's care of J.L.C., explaining that J.L.C. was not current on her immunizations when J.L.C. came to live with him in California and that J.L.C. has sustained injuries, such as ant bites, bruises, and cuts on her finger from fingernail clippers, while in Mother's care. Finally, Father testified that Mother sent him text messages and pictures telling him that her former husband (to whom she was married at the time of J.L.C.'s birth) was J.L.C.'s father and was "better"

11

than Father. Finally, Father told the court that he sometimes does not know where Mother and J.L.C. are living and that, on at least two occasions, he requested time with J.L.C., and Mother refused his request.

The evidence at the final hearing also established that J.L.C. resided in Texas with Mother from the time J.L.C. was born until she was approximately eighteen months old, when J.L.C. began residing with Father following Mother's arrest. At the hearing, Mother testified that she is in the process of divorcing from her husband, who has been physically abusive toward her, and that she has had three residences in the past two years—first with her husband, then with her maternal grandmother, and mostly recently with her mother. According to Mother, she and J.L.C. have lived for the past year in Copperas Cove in a three-bedroom apartment with her mother, her stepfather, and her sister. Mother testified that she works as a bartender from 7 p.m. to 2 a.m., Wednesday through Saturday; that her mother watches J.L.C. while she is at work; and that she does not own a car but is able to borrow her mother's car whenever she needs one. Mother acknowledged that a few months before the final hearing she was arrested for shoplifting and then, a short time later, she was arrested again for assault against Father. Mother also admitted that she was stopped by police in June 2017 for driving without insurance and that she drove without insurance for approximately a month, but not with J.L.C. in the vehicle. Mother denied that she has ever refused Father access to J.L.C. and, instead, claimed there have been occasions when Father would miss his scheduled visits. Mother acknowledged that she has no reason to dispute that Father has a stable job and stable home life but explained to the court that J.L.C. should reside with her because she spends a lot of time with J.L.C., she has "done everything in [her] power to make sure she was well taken care of," and the child has always been happy and healthy while in her care.

12

In addition, the trial court heard from Father's mother, Socorro Ortega, and from Mother's maternal grandmother, Donna Caughron. First, Ortega testified that prior to Father having possession of J.L.C., she would care for her four to five days a week so that Mother would go to work. According to Ortega, J.L.C. was always clean and well fed when she received the child from Mother. Ortega also testified that sometimes when Father was supposed to have visitation with J.L.C., he would leave the child with her and "go out and party and hang out with his friends."

Next, Caughron testified that Mother and J.L.C. resided with her for a period of time after Mother left her husband. According to Caughron, during this time Mother was "in and out, in and out" and occasionally would not return home from work until 5 a.m. Caughron told the court that when Mother returned from work this late, Caughron—and not Mother—would get up to take care of J.L.C. Finally, Caughron testified that she believed Father could provide more stability to J.L.C. and that the child's current living situation in Copperas Cove with her daughter (Mother's mother) was not as stable. Caughron told the court that her son-in-law (Mother's stepfather, who lived in the home with Mother and J.L.C) had recently been released from prison for "burglary and theft and whole lot of other charges." Finally, the trial court heard from two personal friends of Mother's, both of whom testified that Mother was a good mother and that the child was doing well while in Mother's care.

Upon hearing the testimony presented, the trial court impliedly found that it was in J.L.C.'s best interest to award Mother the exclusive right to determine J.L.C.'s primary residence. There is at least some evidence that from the time of her birth until she was eighteen months old, J.L.C. was primarily in Mother's care and that during this time, the child's physical and emotional needs were met. The overwhelming evidence, however, establishes that Father can

13

meet J.L.C.'s physical and emotional needs and can provide the child with a safe, stable home, which Mother currently cannot do. In addition, Mother did not present any evidence suggesting that she would be able to provide J.L.C. with a safe, stable home in the near future. Considering the entirety of the record, and applying the appropriate standards of review, we conclude that although the trial court had legally-sufficient evidence on which to exercise its discretion, the court did not have factually-sufficient evidence to support its best-interest determination. *See Cain*, 709 S.W.2d at 175. Consequently, the trial court's decision to appoint Mother as the conservator with the exclusive right to designate J.L.C.'s primary residence was unreasonable and an abuse of discretion. *See Zeifman*, 212 S.W.3d at 588; *Echols,* 85 S.W.3d at 477.

## CONCLUSION

We reverse those portions of the trial court's order relating to conservatorship, possession, and child support, and we remand the cause to trial court for a new hearing.

_____

Chari L. Kelly, Justice

Before Justices Goodwin, Baker, and Kelly

Reversed and Remanded

Filed: November 27, 2019